George VOLLIN, Jr., and Harrison
Douglas, Appellants,

v.

Ralph KIMBEL et al., Appellees.

No. 74–2277.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1975.

Decided Aug. 4, 1975.

Certiorari Denied Nov. 3, 1975.
See 96 S.Ct. 295.

Sherman W. Pratt, Arlington, Va., for appellants.

Jerry K. Emrich, County Atty. for Arlington County, Va., for appellees.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

The appealing plaintiffs are black residents of Arlington County who attack the at-large system by which the five-member county governing board is elected. The at-large system of election was adopted in 1930 and supplanted a system of election from single-member districts. Plaintiffs assert that the area of Arlington County in which they live is geographically distinct from the rest of the county and in it is concentrated the bulk of the county's black and lower income citizens. Plaintiffs contend that the at-large voting system unconstitutionally dilutes the voting power of the citizens of their area. The district court dismissed the case at the conclusion of plaintiffs' evidence, finding that there were no formal barriers to participation in county elections and that the at-large system had no "actual impact" on the plaintiffs' voting power. We affirm.

Plaintiffs failed to make a case because they failed to show any formal disability, any practical impact on their voting power, or any effective intent to discriminate embodied in the scheme. See Holt v. Richmond, 459 F.2d 1093 (4 Cir.), cert. denied, 408 U.S. 931, 92 S.Ct. 2510, 33 L.Ed.2d 343 (1972). Their case, therefore, rests on two untenable assertions. One is that multi-member electoral units are per se unconstitutional. The second is that blacks are entitled to have a representative on the five-man county board although blacks comprise only 5.8 percent of the voters.*

* Plaintiffs' brief states:

Appellants insist that Black citizens of Arlington County are entitled to equal access to the decision making level of government; i. e. the elective positions on governing bodies . . . . In short, appellants proclaim Black people are entitled to govern—and not merely to be governed!

Both contentions are answered by the recent per curiam opinion of the Supreme Court in *Dallas County v. Reese,* 421 U.S. 477, 95 S.Ct. 1706, 44 L.Ed.2d 312 (1975), *reversing Reese v. Dallas County,* 505 F.2d 879 (5 Cir. 1974) (in banc). The election system for the Dallas County Commission provided for at-large balloting for all four members but required that one of the four commissioners be elected from each of the county's four residency districts. The residency districts varied widely in population; and the plaintiffs alleged that the residency requirement unconstitutionally diluted the votes of the residents of the City of Selma district, because only one member of the commission could be elected from this district although it contained about one-half of the county's population. The Supreme Court not only upheld the at-large election of Commission members, it also rejected the attack as based on assumptions rather than proof of actual dilution of voting power:

We think it clear, however, that *Dusch* [*Dusch v. Davis,* 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967)] contemplated that a successful attack raising such a constitutional question must be based on findings in a particular case that a plan in fact operates impermissibly to dilute the voting strength of an identifiable element of the voting population. Rather than basing its decision on a factual conclusion of this sort, the Court of Appeals relied on a theoretical presumption to reach its determination that residents of Selma were victims of invidious discrimination. That theoretical presumption is that elected officials will represent the districts in which they reside rather than the electorate which chooses them. But that is precisely the proposition rejected in *Dusch.* 421 U.S. at 480, 95 S.Ct. at 1708.

Although neither *Dusch* nor *Reese* presented claims of racial discrimination, they require us to reject the parallel presumption, urged by plaintiffs, that a white elected official represents his race rather than the electorate as a whole and *cannot* represent black citizens. *City of Richmond v. United States,* 422 U.S. 358, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975), similarly holds that, absent proof of a discriminatory purpose in the alteration of a scheme for elections, black voters are not constitutionally entitled to insist that their strength as a voting bloc be preserved.

 Since we find that there was absent evidence which indicates that this "plan in fact operates to impermissibly dilute the voting strength of an identifiable element of the voting population," *Dallas County,* 421 U.S. at 480, 95 S.Ct. at 1708, plaintiffs have failed to make out a case for relief.

*Affirmed.*